IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SEGWAY INC., DEKA PRODUCTS LIMITED PARTNERSHIP, and NINEBOT (TIANJIN) TECHNOLOGY CO., LTD., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. _____ |
| RAZOR USA LLC, | ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Segway Inc., DEKA Products Limited Partnership, and Ninebot (Tianjin) Technology Co., Ltd., by way of Complaint against Razor USA LLC, allege as follows:

## THE PARTIES

1.     Segway Inc. ("Segway") is a corporation organized and existing under the laws of the state of Delaware, having a principal place of business at 14 Technology Drive, Bedford, New Hampshire 03110.  Segway is an innovative technology company that designs, develops, manufactures, distributes and services patented personal transporters that have been publicly sold in the United States since 2002.

2.     DEKA Products Limited Partnership ("DEKA") is a limited partnership organized and existing under the laws of the state of New Hampshire, having a principal place of business at 340 Commercial St., Ste. 401, Manchester, New Hampshire 03101.  DEKA's sole general partner is DEKA Research & Development Corp., a New Hampshire corporation that focuses on the research and development of innovative technologies, including certain technologies on which Segway's patented personal transporters are based.

3.      Ninebot (Tianjin) Technology Co., Ltd. ("Ninebot") is a corporation organized and existing under the laws of the People's Republic of China, having a principal place of business at Building 9, Jiasuqi, Tianrui Rd Science and Technology Park Center, Auto Industrial Park, Wuqing, Tianjin, China.  Ninebot manufactures personal transporters under the "Ninebot" brand name.

4.      On information and belief, Razor USA LLC ("Razor") is a privately-held, limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in Cerritos, California.

5.      On information and belief, Razor is in the business of designing, manufacturing, and selling products such as personal transporter devices.

## JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

7.      Razor is subject to personal jurisdiction in this District because it has conducted and does conduct business within the United States and the State of Delaware.  Razor, directly or through intermediaries (including distributors, retailers, and others) ships, distributes, offers for sale, sells, and advertises products that infringe the patent claims involved in this action in this District.  For example, Razor advertises products that infringe the patent claims involved in this action on its nationally accessible interactive website.  *See, e.g.,* http://www.razor.com/products/ride-ons/hovertrax-hover-board/.  In addition, on information and belief, consumers from anywhere in the country, including Delaware, can purchase products that infringe the patent claims involved in this action directly from Razor's nationally accessible interactive website or from the nationally accessible interactive websites of major national retail

chains such as Amazon.com, Walmart, Kmart, Target, Sears, Sports Authority, and Toys R Us. Razor has purposefully availed itself of the privileges of conducting business in the United States, and more specifically in this District. Razor sought protection and benefit from the laws of the State of Delaware by organizing itself under the laws of the State of Delaware and by placing infringing products into the stream of commerce through an established distribution channel with the awareness and/or intent that they will be purchased by consumers in this District.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and/or 28 U.S.C. § 1400(b).

## SEGWAY'S PERSONAL TRANSPORTERS

9.      Segway created the market for personal transporters when it introduced the first self-balancing, zero-emission personal vehicle in 2001:   the SEGWAY® Human Transporter (now known as the SEGWAY® Personal Transporter ("PT")).  Founded on a vision to develop highly-efficient, zero-emission transportation solutions using dynamic stabilization technology, Segway's research and development was focused on creating devices that took up a minimal amount of space, were extremely maneuverable and could operate on pedestrian sidewalks and pathways.

10.      Since August 2006, Segway has sold its second generation of personal transporter vehicles, which include the patented LeanSteer[TM] technology.  The initial models were:  the i2, with thin non-marking tires for most urban and suburban paved surfaces; and the x2, with deeply-treaded, all-terrain tires for off-road uses.  Both models were sold and distributed with the Reference Manual attached hereto as Exhibit A.

## THE ASSERTED PATENTS

11.     DEKA is the owner of U.S. Patent No. 6,302,230 (the "'230 patent") which is attached as Exhibit B.  The '230 patent discloses and claims a personal transporter with a balance monitor and a method for using such a transporter.  Segway is the exclusive licensee under the '230 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '230 patent.

12.     DEKA is the owner of U.S. Patent No. 6,651,763 (the "'763 patent") which is attached as Exhibit C.  The '763 patent discloses and claims a personal transporter capable of modulating its motion to alert an operator to a specified condition.  Segway is the exclusive licensee under the '763 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '763 patent.

13.     DEKA is the owner of U.S. Patent No. 7,023,330 (the "'330 patent") which is attached as Exhibit D.  The '330 patent discloses and claims an alarm system for a personal transporter that alerts an operator to a specified condition by modulating the motion of the transporter.  Segway is the exclusive licensee under the '330 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '330 patent.

14.     DEKA is the owner of U.S. Patent No. 7,275,607 (the "'607 patent") which is attached as Exhibit E.  The '607 patent discloses and claims improved controllers for a transporter.  Segway is the exclusive licensee under the '607 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '607 patent.

15.     DEKA is the owner of U.S. Patent No. 7,479,872 (the "'872 patent") which is attached as Exhibit F.  The '872 patent discloses and claims an alarm system and a method for alerting the operator of a personal transporter to a specified condition by shaking the transporter.  Segway is the exclusive licensee under the '872 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '872 patent.

16.     DEKA is the owner of U.S. Patent No. 9,188,984 (the "'984 patent") which is attached as Exhibit G.  The '984 patent discloses and claims a personal transporter capable of, and a method of limiting the speed of a personal transporter by, altering the pitch of the transporter in a direction opposite the direction of travel if the speed of the transporter exceeds a threshold.  Segway is the exclusive licensee under the '984 patent in the relevant consumer transporter field pursuant to a license agreement with DEKA.  Ninebot is an affiliate of Segway and a sub-licensee under the '984 patent.

## COUNT I – INFRINGEMENT OF '230 PATENT

17.     Plaintiffs reallege, as if fully set forth herein, the averments contained in paragraphs 1-16.

18.     On information and belief, Razor has been and is now directly infringing the '230 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claims 1 and 5 of the '230 patent, including but not limited to the Hovertrax product.  Razor is therefore liable for direct infringement of the '230 patent under 35 U.S.C. § 271(a).

19.     On information and belief, the Hovertrax product meets all the elements of claim 1 of the '230 patent.  According to the Owner's Manual for the Razor Hovertrax product,

attached hereto as Exhibit H,[1] the Hovertrax product is a vehicle for carrying a payload including a user.  *See, e.g.,* Ex. H, p. 1 ("[The Hovertrax] is an electrically motorized, computerized, gyroscopically-balance-assisted, independently articulated, dual-platform two wheeled personal mobility system.").  It comprises a platform which supports the user, *see, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 ("Anti-Slip Foot Platforms"), 6 ("pressure on the foot platform(s) applied by the rider's feet"), and 9 ("1. Rubber Footplate"), and a ground-contacting module, to which the platform is mounted, which propels the user in a desired motion over an underlying surface, *see, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 (figure), 6 ("In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move."), 7 ("two-wheeled"), 8 ("The Hovertrax wheels must be able to grip the ground for you to stay upright."), and 9 ("10. Wheel w/ Hub Motor (Right/Left)").  It also comprises a motorized drive arrangement, coupled to the ground-contacting module.  *See, e.g., id.* at pp. 3 ("…the electrical and drive components…) and 9 ("10. Wheel w/ Hub Motor (Right/Left").  The drive arrangement, ground-contacting module and payload comprise a system that is unstable with respect to tipping when the motorized drive is not powered, *see, e.g., id.* at p. 8 ("Remember to check for the green battery indicator light before you get on.  If it is not lit, the unit is not on and you will fall."), but when powered, the motorized drive arrangement causes automatically balanced operation of the system wherein the vehicle has a present velocity and a maximum operating velocity, determined by a requirement of acceleration to maintain balance, *see, e.g., id.* at pp. 1 ("gyroscopically-

---

[1] The Owner's Manual for the Razor Hovertrax and Hovertrax DLX products was downloaded from http://0075397ca1480a6422a6-373ec2a9a8c1bd0dc32a6d880ae07ded.r21.cf1.rackcdn.com/wp-content/uploads/2015/11/Hovertrax_MAN_US_151124.pdf.  The link to this URL was included on the Hovertrax product webpage on Razor's website.  *See* "Download Owner's Manual" at http://www.razor.com/products/ride-ons/hovertrax-hover-board/.

balance-assisted"), 6 ("When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.  In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating;" and "self-balances"), 7 ("Hovertrax can balance"), and 8 ("Hovertrax's balance sensors").  In operation, the Hovertrax product has a balancing margin determined by the difference between the maximum operating velocity and the present velocity of the vehicle and a balancing margin monitor, coupled to the ground-contacting module, for generating a signal characterizing the balancing margin.  *See, e.g., id.* at pp. 6 ("Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move;" and "...the gyroscopic mechanized balancing feature detects the 'levelness' of the product.  This same feature detects foot movements which cause a foot platform to no longer be 'level' and it interprets these changes as orders to move."), 7 ("**HOVERTRAX SPEED CONTROL**" (emphasis in original) and "The recommended top speed of the Hovertrax is approximately six miles per hour (9 km/hr). . . .  The Hovertrax has a 'limiter' feature which may engage to warn against further acceleration beyond recommended levels.  This safety feature causes the front edge of the foot platforms to 'push back' against the rider's feet to caution about excessive speed."), and 9 ("12. Control Module").  The Hovertrax product further comprises an alarm, coupled to the balancing margin monitor, for receiving the signal characterizing the balancing margin and for warning when the balancing margin falls below a specified limit.  *See, e.g., id.* at pp. 7 ("**HOVERTRAX SPEED CONTROL**"

(emphasis in original); "The recommended top speed of the Hovertrax is approximately six miles per hour (9 km/hr). . . .  The Hovertrax has a 'limiter' feature which may engage to warn against further acceleration beyond recommended levels.  This safety feature causes the front edge of the foot platforms to 'push back' against the rider's feet to caution about excessive speed;" and "**Level alert:**  if the product is not level enough for the balancing feature to engage, a level indicator light will turn red. . . ." (emphasis in original)) and 9 ("3. Warning Indicator LED").

   20. On information and belief, the Hovertrax product meets all the elements of claim 5 of the '230 patent.  The Owner's Manual for the Razor Hovertrax product describes a method for using a vehicle to carry a payload including a user.  *See, e.g.,* Ex. H, p. 1 ("[The Hovertrax] is an electrically motorized, computerized, gyroscopically-balance-assisted, independently articulated, dual-platform two wheeled personal mobility system.").  The Hovertrax Owner's Manual also describes supporting the user on a platform, the platform mounted to a ground-contacting module, for propelling the vehicle in a desired motion over an underlying surface.  *See, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 (figure, including "Anti-Slip Foot Platforms"), 6 ("In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move."), 8 ("The Hovertrax wheels must be able to grip the ground for you to stay upright."), and 9 ("1. Rubber Footplate" and "10. Wheel w/ Hub Motor (Right/Left)").  In addition, the Owner's Manual describes operating a motorized drive arrangement to provide automatically balanced operation of the vehicle, the vehicle being unstable with respect to tipping when the motorized drive is not powered, the vehicle having a present velocity and a maximum operating velocity, determined to maintain acceleration potential to ensure balance.

*See, e.g., id.* at pp. 1 ("gyroscopically-balance-assisted"), 3 ("…the electrical and drive components…), 6 ("When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.  In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating;" and "self-balances"), 7 ("Hovertrax can balance"), 8 ("Hovertrax's balance sensors" and "Remember to check for the green battery indicator light before you get on.  If it is not lit, the unit is not on and you will fall."), and 9 ("10. Wheel w/ Hub Motor (Right/Left").  In operation, the Hovertrax product has a balancing margin determined by the difference between the maximum operating velocity and the present velocity of the vehicle, wherein the balancing margin is monitored and a signal characterizing the balancing margin is generated.  *See, e.g., id.* at pp. 6 ("Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move;" and "…the gyroscopic mechanized balancing feature detects the 'levelness' of the product.  This same feature detects foot movements which cause a foot platform to no longer be 'level' and it interprets these changes as orders to move."), 7 ("**HOVERTRAX SPEED CONTROL**" (emphasis in original) and "The recommended top speed of the Hovertrax is approximately six miles per hour (9 km/hr). . . .  The Hovertrax has a 'limiter' feature which may engage to warn against further acceleration beyond recommended levels.  This safety feature causes the front edge of the foot platforms to 'push back' against the rider's feet to caution about excessive speed."), and 9 (12. Control Module").  An alarm is generated based on the signal to warn when

the balancing margin falls below a specified limit.  *See, e.g., id.* at pp. 7 ("**HOVERTRAX SPEED CONTROL**" (emphasis in original); "The recommended top speed of the Hovertrax is approximately six miles per hour (9 km/hr). . . .  The Hovertrax has a 'limiter' feature which may engage to warn against further acceleration beyond recommended levels.  This safety feature causes the front edge of the foot platforms to 'push back' against the rider's feet to caution about excessive speed;" and "**Level alert:**  if the product is not level enough for the balancing feature to engage, a level indicator light will turn red. . . ." (emphasis in original)) and 9 ("3. Warning Indicator LED").

21.     On information and belief, Razor has knowledge of the '230 patent or has acted with willful blindness to its existence.  Since at least October 2011, all Segway model i2 and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf."[2]  The Reference Manual to which one is directed by this label contains, on pp. 141 and 142, a list of Segway patents and applications that cover the i2 and x2 personal transporters, including the '230 patent.  These personal transporters were the original such personal transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United States patents.  Further, Razor has had actual knowledge of the '230 patent at least as of the filing of this complaint.

22.     On information and belief, Razor has been and is now indirectly infringing the '230 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 18-20 above, to directly infringe at least claims 1 and 5 of the '230 patent.  On information and belief,

---

[2] The Reference Manual for the i2 and x2 personal transporters is now located at http://www.segway.com/segway-resources/downloads/pdfs/ReferenceManual.pdf.

distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claims 1 and 5 of the '230 patent. Further, on information and belief, Razor, by providing at least manuals, training, guides, videos and/or demonstrations, including the Owner's Manual attached hereto as Exhibit H, induces distributors, customers and/or end-users of the personal transporters identified and described in paragraphs 18-20 to perform acts intended by Razor to cause direct infringement of at least claims 1 and 5 of the '230 patent. On information and belief, as discussed in paragraph 21, Razor has knowledge of the '230 patent or has acted with willful blindness to its existence. Razor is therefore liable for inducing infringement of the '230 patent under 35 U.S.C. § 271(b).

23. On information and belief, Razor has been and is now indirectly infringing the '230 patent by contributing to infringement by others of at least claims 1 and 5 of the '230 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 18-20 above. On information and belief, Razor contributes to such infringement at least by providing to such distributors, customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claims 1 and 5 of the '230 patent and are not staple articles of commerce suitable for substantial non-infringing use. On information and belief, as discussed in paragraph 21, Razor had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '230 patent and are not staple articles of commerce suitable for substantial non-infringing use. Razor is therefore liable for contributory infringement of the '230 patent under 35 U.S.C. § 271(c).

24. As a result of its infringement of the '230 patent, Razor has damaged Plaintiffs. Razor is liable to Plaintiffs in an amount to be determined at trial that adequately

compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

25.     Razor's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law.  Unless enjoined by this Court, Razor will continue to infringe the '230 patent.

## COUNT II – INFRINGEMENT OF '763 PATENT

26.     Plaintiffs reallege, as if fully set forth herein, the averments contained in paragraphs 1-25.

27.     On information and belief, Razor has been and is now directly infringing the '763 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claim 1 of the '763 patent, including but not limited to the Hovertrax product.  Razor is therefore liable for direct infringement of the '763 patent under 35 U.S.C. § 271(a).

28.     On information and belief, the Hovertrax product meets all the elements of claim 1 of the '763 patent.  According to the Owner's Manual for the Razor Hovertrax product, the Hovertrax product is a vehicle for carrying a user.  *See, e.g.,* Ex. H, p. 1 ("[The Hovertrax] is an electrically motorized, computerized, gyroscopically-balance-assisted, independently articulated, dual-platform two wheeled personal mobility system.").  It comprises a ground-contacting module that supports a payload including the user, the ground-contacting module contacting an underlying surface and including at least one ground-contacting member.  *See, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 (figure, including "Anti-Slip Foot Platforms"), 6 ("pressure on the foot platform(s) applied by the rider's feet"), 8 ("The Hovertrax wheels must be able to grip the ground for you to stay upright."), and 9 ("1. Rubber

Footplate" and "10. Wheel w/ Hub Motor (Right/Left)"). It further comprises a motorized drive for actuating the at least one ground-contacting member so as to propel the vehicle in a normal mode of locomotion. *See, e.g., id.* at pp. 3 ("…electrical and drive components…), 6 ("In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet. Such changes are interpreted by the Hovertrax as instructions to make the wheels move. Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating."), and 9 ("10. Wheel w/ Hub Motor (Right/Left)"). It also comprises a sensor for sensing a specified condition of the vehicle. *See, e.g., id.* at pp. 2 ("Do not ride the Razor Hovertrax when its battery is low, as indicated by a solid red indicator light or shaking of the wheels during operation."), 5 ("**Battery Power Level Indicators**" (emphasis in original); "Solid Green: Battery power level is 15 to 100 percent;" "Flashing Green: Battery power level is 5 to 15 percent, recommend charging;" "Solid Red: Battery power level is below 5 percent. Do not ride and charge immediately;" and "**WARNING:** The Hovertrax will notify you when the battery charge is dangerously low by slowing down and shaking the wheels when you are riding it." (emphasis in original)), 6 ("Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet. Such changes are interpreted by the Hovertrax as instructions to make the wheels move;" and "…the gyroscopic mechanized balancing feature detects the 'levelness' of the product. This same feature detects foot movements which cause a foot platform to no longer be 'level' and it interprets these changes as orders to move."), 7 ("**Low or charging battery:** The battery indicator light will indicate insufficient charge for operation by turning red." (emphasis in original)), and 8 ("Hovertrax's balance sensors"). In addition, it comprises a controller for causing the vehicle, in response to the specified condition,

to be accelerated with a vehicle acceleration modulated with a periodic modulation such that the vehicle acceleration alternates between braking and speeding up and braking over each period of the modulation.  *See, e.g., id.* at pp. 5 ("**WARNING:** The Hovertrax will notify you when the battery charge is dangerously low by slowing down and shaking the wheels when you are riding it." (emphasis in original)) and 9 ("12. Control Module").

29.     On information and belief, Razor has knowledge of the '763 patent or has acted with willful blindness to its existence.  Since at least October 2011, all Segway model i2 and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf."   The Reference Manual to which one is directed by this label contains, on pp. 141 and 142, a list of Segway patents and applications that cover the i2 and x2 personal transporters, including the '763 patent.  These personal transporters were the original such personal transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United States patents.  Further, Razor has had actual knowledge of the '763 patent at least as of the filing of this complaint.

30.     On information and belief, Razor has been and is now indirectly infringing the '763 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 27-28 above, to directly infringe at least claim 1 of the '763 patent.  On information and belief, distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claim 1 of the '763 patent.  Further, on information and belief, Razor, by providing at least manuals, training, guides, videos and/or demonstrations, including the Owner's Manual attached hereto as Exhibit H, induces

distributors, customers and/or end-users of the personal transporters identified and described in paragraphs 27-28 to perform acts intended by Razor to cause direct infringement of at least claim 1 of the '763 patent.   On information and belief, as discussed in paragraph 29, Razor has knowledge of the '763 patent or has acted with willful blindness to its existence.   Razor is therefore liable for inducing infringement of the '763 patent under 35 U.S.C. § 271(b).

31.     On information and belief, Razor has been and is now indirectly infringing the '763 patent by contributing to infringement by others of at least claim 1 of the '763 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraph 27-28 above.   On information and belief, Razor contributes to such infringement at least by providing to such distributors, customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claim 1 of the '763 patent and are not staple articles of commerce suitable for substantial non-infringing use.   On information and belief, as discussed in paragraph 29, Razor had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '763 patent and are not staple articles of commerce suitable for substantial non-infringing use.   Razor is therefore liable for contributory infringement of the '763 patent under 35 U.S.C. § 271(c).

32.     As a result of its infringement of the '763 patent, Razor has damaged Plaintiffs.   Razor is liable to Plaintiffs in an amount to be determined at trial that adequately compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

33.     Razor's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law.  Unless enjoined by this Court, Razor will continue to infringe the '763 patent.

### COUNT III – INFRINGEMENT OF '330 PATENT

34.     Plaintiffs reallege, as if fully set forth herein, the averments contained in paragraphs 1-33.

35.     On information and belief, Razor has been and is now directly infringing the '330 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claims 1 and 5 of the '330 patent, including but not limited to the Hovertrax product.  Razor is therefore liable for direct infringement of the '330 patent under 35 U.S.C. § 271(a).

36.     On information and belief, the Hovertrax product meets all the elements of claims 1 and 5 of the '330 patent.  According to the Owner's Manual for the Razor Hovertrax product, the Hovertrax product includes an alarm system for alerting the operator of a vehicle having a motorized drive.  The alarm system of the Hovertrax product comprises a sensor for sensing a specified condition of the vehicle, the specified condition including, *e.g.*, low battery power.  *See, e.g.,* Ex. H, pp. 2 ("Do not ride the Razor Hovertrax when its battery is low, as indicated by a solid red indicator light or shaking of the wheels during operation."),  5 ("**Battery Power Level Indicators**" (emphasis in original); "Solid Green: Battery power level is 15 to 100 percent;" "Flashing Green: Battery power level is 5 to 15 percent, recommend charging;" "Solid Red: Battery power level is below 5 percent.  Do not ride and charge immediately;" and "**WARNING:** The Hovertrax will notify you when the battery charge is dangerously low by slowing down and shaking the wheels when you are riding it." (emphasis in original)), 6

("Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet. Such changes are interpreted by the Hovertrax as instructions to make the wheels move;" and "...the gyroscopic mechanized balancing feature detects the 'levelness' of the product. This same feature detects foot movements which cause a foot platform to no longer be 'level' and it interprets these changes as orders to move."), 7 ("**Low or charging battery:** The battery indicator light will indicate insufficient charge for operation by turning red." (emphasis in original); "Hovertrax has a 'limiter' feature which may engage to warn against further acceleration beyond recommended levels;" and "**Level alert:** if the product is not level enough for the balancing feature to engage, a level indicator light will turn red and the product will not be operable until properly level."), 8 ("Hovertrax's balance sensors"), and 9 ("3. Warning Indicator LED"). The alarm system of the Hovertrax product further comprises a controller for causing the motorized drive, in response to the specified condition, to accelerate the vehicle with a vehicle acceleration modulated with a periodic modulation such that the vehicle acceleration alternates between braking and speeding up and braking over each period of the modulation. *See, e.g., id.* In addition, the Hovertrax product is a vehicle that includes a control loop in which a motorized drive is included, for propelling the vehicle in a condition of dynamic balance with respect to tipping in the fore-aft plane. *See, e.g., id.* at pp. 1 ("[The Hovertrax] is an electrically motorized, computerized, gyroscopically-balance-assisted, independently articulated, dual-platform two wheeled personal mobility system."), 3 ("...electrical and drive components..."), 6 ("When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground. In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet. Such changes are

interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating;" and "self-balances"), 7 ("Hovertrax can balance), 8 ("Hovertrax's balance sensors"), and 9 ("10. Wheel w/ Hub Motor (Right/Left)" and "12. Control Module").

37.     On information and belief, Razor has knowledge of the '330 patent or has acted with willful blindness to its existence.  Since at least October 2011, all Segway model i2 and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf."   The Reference Manual to which one is directed by this label contains, on pp. 141 and 142, a list of Segway patents and applications that cover the i2 and x2 personal transporters, including the '330 patent.  These personal transporters were the original such personal transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United States patents.  Further, Razor has had actual knowledge of the '330 patent at least as of the filing of this complaint.

38.     On information and belief, Razor has been and is now indirectly infringing the '330 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 35-36 above, to directly infringe at least claims 1 and 5 of the '330 patent.  On information and belief, distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claims 1 and 5 of the '330 patent. Further, on information and belief, Razor, by providing at least manuals, training, guides, videos and/or demonstrations, including the Owner's Manual attached hereto as Exhibit H, induces distributors, customers and/or end-users of the personal transporters identified and described in

paragraphs 35-36 to perform acts intended by Razor to cause direct infringement of at least claims 1 and 5 of the '330 patent.  On information and belief, as discussed in paragraph 37, Razor has knowledge of the '330 patent or has acted with willful blindness to its existence. Razor is therefore liable for inducing infringement of the '330 patent under 35 U.S.C. § 271(b).

39.     On information and belief, Razor has been and is now indirectly infringing the '330 patent by contributing to infringement by others of at least claims 1 and 5 of the '330 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 35-36 above.  On information and belief, Razor contributes to such infringement at least by providing to such distributors, customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claims 1 and 5 of the '330 patent and are not staple articles of commerce suitable for substantial non-infringing use.  On information and belief, as discussed in paragraph 37, Razor had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '330 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Razor is therefore liable for contributory infringement of the '330 patent under 35 U.S.C. § 271(c).

40.     As a result of its infringement of the '330 patent, Razor has damaged Plaintiffs.  Razor is liable to Plaintiffs in an amount to be determined at trial that adequately compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

41.     Razor's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law.  Unless enjoined by this Court, Razor will continue to infringe the '330 patent.

## COUNT IV – INFRINGEMENT OF '607 PATENT

42.     Plaintiffs reallege, as if fully set forth herein, the averments contained in paragraphs 1-41.

43.     On information and belief, Razor has been and is now directly infringing the '607 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claim 1 of the '607 patent, including but not limited to the Hovertrax product.  Razor is therefore liable for direct infringement of the '607 patent under 35 U.S.C. § 271(a).

44.     On information and belief, the Hovertrax product meets all the elements of claim 1 of the '607 patent.  According to the Owner's Manual for the Razor Hovertrax product, the Hovertrax product includes a controller for a transporter having at least one primary ground-contacting element, the transporter characterized by a roll angle.  *See, e.g.,* Ex. H, pp. 1 ("[The Hovertrax] is an electrically motorized, computerized, gyroscopically-balance-assisted, independently articulated, dual-platform two wheeled personal mobility system."), 4 ("Rubber Tires"), 6 ("In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move."), 8 ("The Hovertrax wheels must be able to grip the ground for you to stay upright."), and 9 ("10. Wheel w/ Hub Motor (Right/Left)," "12. Control Module").  The controller of the Hovertrax product also comprises an input adapted to receive specification by a user of a desired yaw, yaw rate, and direction of motion of the transporter, at least the desired yaw and yaw rate being based on a detected body orientation of the user.  *See, e.g., id.* at p. 6 ("Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are

interpreted by the Hovertrax as instructions to make the wheels move;" "the gyroscope mechanized balancing feature detects the 'levelness' of the product.  This same feature detects foot movements which cause a foot platform to no longer by 'level' and it interprets these changes as orders to move;" and "Turns are done by putting more downward pressure on the front side of the foot platform on outside of the turn;" "A rider can spin in place by pushing downward on the front edge of one foot platform while simultaneously pushing downward on the rear edge of the other foot platform;" and "the product 'self balances' itself in order to be ready to detect and implement the instructions provided by the rider's feet.").  *See also, e.g.,* "The Razor HOVERTRAX- Smart Balancing Electric Scooter" video at https://www.youtube.com/watch?v=BfVzC2-yLfE.   The controller of the Hovertrax product further comprises a pitch state estimator for sensing a pitch of the transporter and outputting a pitch state signal.  *See, e.g., id.* at p. 6 ("Hovertrax then  detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move;" and "the gyroscope mechanized balancing feature detects the 'levelness' of the product.  This same feature detects foot movements which cause a foot platform to no longer by 'level' and it interprets these changes as orders to move.").  *See also, e.g.,* "The Razor HOVERTRAX- Smart Balancing Electric Scooter" video at https://www.youtube.com/watch?v=BfVzC2-yLfE.  The controller of the Hovertrax product also comprises a processor of a kind that generates a command signal governing motion of the at least one ground-contacting element based at least on the user-specified yaw and yaw rate received by the input, in conjunction with the pitch state signal based on the pitch of the transporter, in such a manner as to maintain balance of the transporter in the course of achieving the specified yaw and direction of motion of the transporter.  *See, e.g., id.* at

pp. 6 ("Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet. Such changes are interpreted by the Hovertrax as instructions to make the wheels move;" "Turns are done by putting more downward pressure on the front side of the foot platform on outside of the turn;" "A rider can spin in place by pushing downward on the front edge of one foot platform while simultaneously pushing downward on the rear edge of the other foot platform;" "…the gyroscope mechanized balancing feature detects the 'levelness' of the product. This same feature detects foot movements which cause a foot platform to no longer by 'level' and it interprets these changes as orders to move;" and "the product 'self balances' itself in order to be ready to detect and implement the instructions provided by the rider's feet.") and 9 ("12. Control Module"). *See also, e.g.,* "The Razor HOVERTRAX- Smart Balancing Electric Scooter" video at https://www.youtube.com/watch?v=BfVzC2-yLfE.

45.     On information and belief, Razor has knowledge of the '607 patent or has acted with willful blindness to its existence. Since at least October 2011, all Segway model i2 and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf." The Reference Manual to which one is directed by this label contains, on pp. 141 and 142, a list of Segway patents and applications that cover the i2 and x2 personal transporters, including Patent Application Publication No. 20050121866, which is the published application that ultimately issued as the '607 patent. These personal transporters were the original such personal transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United States patents. Further, Razor has had actual knowledge of the '607 patent at least as of the filing of this complaint.

46.     On information and belief, Razor has been and is now indirectly infringing the '607 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 43-44 above, to directly infringe at least claim 1 of the '607 patent.   On information and belief, distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claim 1 of the '607 patent.   Further, on information and belief, Razor, by providing at least manuals, training, guides, videos and/or demonstrations, including the Owner's Manual attached hereto as Exhibit H, induces distributors, customers and/or end-users of the personal transporters identified and described in paragraphs 43-44 to perform acts intended by Razor to cause direct infringement of at least claim 1 of the '607 patent.   On information and belief, as discussed in paragraph 45, Razor has knowledge of the '607 patent or has acted with willful blindness to its existence.   Razor is therefore liable for inducing infringement of the '607 patent under 35 U.S.C. § 271(b).

47.     On information and belief, Razor has been and is now indirectly infringing the '607 patent by contributing to infringement by others of at least claim 1 of the '607 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 43-44 above.   On information and belief, Razor contributes to such infringement at least by providing to such distributors, customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claim 1 of the '607 patent and are not staple articles of commerce suitable for substantial non-infringing use.   On information and belief, as discussed in paragraph 45, Razor had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '607

patent and are not staple articles of commerce suitable for substantial non-infringing use.  Razor is therefore liable for contributory infringement of the '607 patent under 35 U.S.C. § 271(c).

48.     As a result of its infringement of the '607 patent, Razor has damaged Plaintiffs.  Razor is liable to Plaintiffs in an amount to be determined at trial that adequately compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

49.     Razor's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law.  Unless enjoined by this Court, Razor will continue to infringe the '607 patent.

## COUNT V – INFRINGEMENT OF '872 PATENT

50.     Plaintiffs reallege, as if fully set forth herein, the averments contained in paragraphs 1-49.

51.     On information and belief, Razor has been and is now directly infringing the '872 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claims 1, 5, 11, and 12 of the '872 patent, including but not limited to the Hovertrax product.  Razor is therefore liable for direct infringement of the '872 patent under 35 U.S.C. § 271(a).

52.     On information and belief, the Hovertrax product meets all the elements of claims 1 and 5 of the '872 patent.  According to the Owner's Manual for the Razor Hovertrax product, the Hovertrax product includes an alarm system for alerting the operator of a vehicle having a motorized drive.  The alarm system of the Hovertrax product comprises an alarm comprising a shaker for periodically modulating acceleration of the vehicle.  *See, e.g.,* Ex. H, pp. 2 ("Do not ride the Razor Hovertrax when its battery is low, as indicated by a solid red indicator

light or shaking of the wheels during operation."), 5 ("**WARNING:** The Hovertrax will notify you when the battery charge is dangerously low by slowing down and shaking the wheels when you are riding it." (emphasis in original)), and 9 ("3. Warning Indicator LED" and "10. Wheel w/ Hub Motor (Right/Left)").   The alarm system of the Hovertrax product comprises a sensor for sensing a specified condition of the vehicle, the specified condition including, *e.g.*, low battery power.   *See, e.g., id.* at pp. 2 ("Do not ride the Razor Hovertrax when its battery is low, as indicated by a solid red indicator light or shaking of the wheels during operation."), 5 ("**Battery Power Level Indicators**" (emphasis in original); "Solid Green: Battery power level is 15 to 100 percent;" "Flashing Green: Battery power level is 5 to 15 percent, recommend charging;" "Solid Red: Battery power level is below 5 percent.   Do not ride and charge immediately;" and "**WARNING:** The Hovertrax will notify you when the battery charge is dangerously low by slowing down and shaking the wheels when you are riding it." (emphasis in original)), 7 ("**Low or charging battery:** The battery indicator light will indicate insufficient charge for operation by turning red." (emphasis in original)), and 8 ("Hovertrax's balance sensors").   In addition, the alarm system of the Hovertrax product comprises a controller for causing the motorized drive, in response to the specified condition, to operate as the shaker of the alarm for alerting the operator.   *See, e.g., id*; *see also id.* at pp. 3 ("…electrical and drive components…"), 6 ("In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.   Such changes are interpreted by the Hovertrax as instructions to make the wheels move.   Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating."), and 9 ("10. Wheel w/ Hub Motor (Right/Left)" and "12. Control Module").

53.     On information and belief, the Hovertrax product meets all the elements of claims 11 and 12 of the '872 patent.  The Owner's Manual for the Razor Hovertrax product describes a method for alerting a rider of a vehicle to a condition requiring attention, the method comprising sensing a specified condition of the vehicle, the specified condition including, *e.g.*, low battery power, and using a motorized drive to shake the rider with a periodically modulated acceleration of the vehicle, in response to the specified condition.  *See, e.g.,* Ex. H, pp. 1 ("dual-platform two wheeled personal mobility system"), 2 ("Do not ride the Razor Hovertrax when its battery is low, as indicated by a solid red indicator light or shaking of the wheels during operation."),   3 ("…the electrical and drive components could get damaged by water…), 5 ("**Battery Lower Level Indicators**" (emphasis in original); "Solid Green: Battery power level is 15 to 100 percent;" "Flashing Green: Battery power level is 5 to 15 percent, recommend charging;" "Solid Red: Battery power level is below 5 percent.   Do not ride and charge immediately;" and "**WARNING:** The Hovertrax will notify you when the battery charge is dangerously low by slowing down and shaking the wheels when you are riding it." (emphasis in original)), 6 ("In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating."), 7 ("**Low or charging battery:** The battery indicator light will indicate insufficient charge for operation by turning red." (emphasis in original)), 8 ("Hovertrax's balance sensors"), and 9 ("10. Wheel w/ Hub Motor (Right/Left)").

54.     On information and belief, Razor has knowledge of the '872 patent or has acted with willful blindness to its existence.  Since at least October 2011, all Segway model i2

and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf."   The Reference Manual to which one is directed by this label contains, on pp. 141 and 142, a list of Segway patents and applications that cover the i2 and x2 personal transporters, including the '330 patent, the '763 patent, and the '230 patent.   The '872 patent is a continuation of the '330 patent, which is a division of the '763 patent, which is a continuation-in-part of the '230 patent.   These personal transporters were the original such personal transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United States patents.   Further, Razor has had actual knowledge of the '872 patent at least as of the filing of this complaint.

55.     On information and belief, Razor has been and is now indirectly infringing the '872 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 51-53 above, to directly infringe at least claims 1, 5, 11, and 12 of the '872 patent.   On information and belief, distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claims 1, 5, 11, and 12 of the '872 patent.   Further, on information and belief, Razor, by providing at least manuals, training, guides, videos and/or demonstrations, including the Owner's Manual attached hereto as Exhibit H, induces distributors, customers and/or end-users of the personal transporters identified and described in paragraphs 51-53 to perform acts intended by Razor to cause direct infringement of at least claims 1, 5, 11, and 12 of the '872 patent.   On information and belief, as discussed in paragraph 54, Razor has knowledge of the '872 patent or has acted with willful blindness to its

existence.  Razor is therefore liable for inducing infringement of the '872 patent under 35 U.S.C. § 271(b).

56.     On information and belief, Razor has been and is now indirectly infringing the '872 patent by contributing to infringement by others of at least claims 1, 5, 11, and 12 of the '872 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 51-53 above.  On information and belief, Razor contributes to such infringement at least by providing to such distributors, customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claims 1, 5, 11, and 12 of the '872 patent and are not staple articles of commerce suitable for substantial non-infringing use.  On information and belief, as discussed in paragraph 54, Razor had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '872 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Razor is therefore liable for contributory infringement of the '872 patent under 35 U.S.C. § 271(c).

57.     As a result of its infringement of the '872 patent, Razor has damaged Plaintiffs.  Razor is liable to Plaintiffs in an amount to be determined at trial that adequately compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

58.     Razor's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law.  Unless enjoined by this Court, Razor will continue to infringe the '872 patent.

## COUNT VI – INFRINGEMENT OF '984 PATENT

59.     Plaintiffs reallege, as if fully set forth herein, the averments contained in paragraphs 1-58.

60.     On information and belief, Razor has been and is now directly infringing the '984 patent by making, using, selling, and/or offering for sale in the United States and/or importing into the United States personal transporters that practice or embody at least claims 1, 8 and 15 of the '984 patent, including but not limited to the Hovertrax product.  Razor is therefore liable for direct infringement of the '984 patent under 35 U.S.C. § 271(a).

61.     On information and belief, the Hovertrax product meets all the elements of claim 1 of the '984 patent.  According to the Owner's Manual for the Razor Hovertrax product, the Hovertrax product is a transporter for transporting a user.  *See, e.g.,* Ex. H, p. 1 ("[The Hovertrax] is an electrically motorized, computerized, gyroscopically-balance-assisted, independently articulated, dual-platform two wheeled personal mobility system.").  It comprises a platform supporting the user, *see, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 ("Anti-Slip Foot Platforms"), 6 ("pressure on the foot platform(s) applied by the rider's feet"), and 9 ("1. Rubber Footplate"), at least one wheel, *see, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 (figure), 7 ("two-wheeled"),  and 9 ("10. Wheel w/ Hub Motor (Right/Left)"), and a motorized drive arrangement imparting a torque to the at least one wheel, *see, e.g., id.* at pp. 3 ("…the electrical and drive components…"), 4 (figure), 6 ("When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.   In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.   Such changes are interpreted by the Hovertrax as

instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating."), and 9 ("10. Wheel w/ Hub Motor (Right/Left").  The Hovertrax product also comprises a plurality of sensors, at least one of the plurality of sensors being a pitch sensor sensing a pitch of at least a portion of the transporter. *See, e.g., id.* at pp. 6 ("The Hovertrax responds to the rider's foot movements.  Remember this. The Hovertrax moves due to fore and aft foot platform tilt caused by the rider's foot (or feet). Movement, speed, and stopping are controlled by the degree to which the rider's feet causes the foot platforms of the Hovertrax to no longer be parallel to the ground.  When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.  In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating;" and "the gyroscopic mechanized balancing feature detects the 'levelness' of the product"), 7 ("**Product Warning Signals**" (emphasis in original); and "**Low or charging battery:** The battery indicator light will indicate insufficient charge for operation by turning red." (emphasis in original)), and 8 ("Hovertrax's balance sensors").   In addition, the Hovertrax product comprises a controller executing a control loop, the control loop generating, based at least in part on the sensed pitch, a control signal for controlling the motorized drive arrangement, the control signal specifying, for the motorized drive arrangement, the torque, the controller altering the control signal to pitch the transporter in a direction opposite a current direction of travel of the transporter if a current speed of the transporter exceeds a threshold.  *See, e.g., id.* at pp. 6 ("The Hovertrax responds to the rider's foot movements.  Remember this.  The Hovertrax moves due to fore and aft foot platform

tilt caused by the rider's foot (or feet).  Movement, speed, and stopping are controlled by the degree to which the rider's feet causes the foot platforms of the Hovertrax to no longer be parallel to the ground.  When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.  In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating;" and "the gyroscopic mechanized balancing feature detects the 'levelness' of the product"), 7 ("**HOVERTRAX SPEED CONTROL**" (emphasis in original); and "The recommended top speed of the Hovertrax is approximately six miles per hour (9 km/hr).  Speed may be affected by rider weight, surface conditions, battery charge, *etc*.  The Hovertrax has a 'limiter' feature which may engage to warn against further acceleration beyond recommended levels.  This safety feature causes the front edge of the foot platforms to 'push back' against the rider's feet to caution about excessive speed."), and 9 ("12. Control Module").

62.     On information and belief, the Hovertrax product meets all the elements of claim 8 of the '984 patent.  According to the Owner's Manual for the Razor Hovertrax product, the Hovertrax product is a transporter for transporting a user.  *See, e.g.,* Ex. H, p. 1 ("[The Hovertrax] is an electrically motorized, computerized, gyroscopically-balance-assisted, independently articulated, dual-platform two wheeled personal mobility system.").  It comprises a platform, *see, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 ("Anti-Slip Foot Platforms"), 6 ("pressure on the foot platform(s) applied by the rider's feet"), and 9 ("1. Rubber Footplate"), two wheels, *see, e.g., id.* at pp. 1 ("dual-platform two wheeled

personal mobility system"), 4 (figure), 7 ("two-wheeled"),  and 9 ("10. Wheel w/ Hub Motor (Right/Left)"), and a motorized drive arrangement imparting a torque to each of the two wheels, *see, e.g., id.* at pp. 3 ("…the electrical and drive components…), 4 (figure), 6 ("When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.  In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating."), and 9 ("10. Wheel w/ Hub Motor (Right/Left").  The Hovertrax product is unstable with respect to tipping in a fore-aft plane of the transporter when the motorized drive arrangement is not powered. *See, e.g., id.* at pp. 2 ("The Razor Hovertrax may stop operating and cause you to fall.") and 8 ("Remember to check for the green battery indicator light before you get on.  If it is not lit, the unit is not on and you will fall.").  The Hovertrax product also comprises a plurality of sensors providing data inputs to a control loop, at least one of the plurality of sensors being a pitch sensor sensing a pitch of at least a portion of the transporter, the pitch sensor generating pitch data. *See, e.g., id.* at pp. 6 ("The Hovertrax responds to the rider's foot movements.  Remember this.  The Hovertrax moves due to fore and aft foot platform tilt caused by the rider's foot (or feet).  Movement, speed, and stopping are controlled by the degree to which the rider's feet causes the foot platforms of the Hovertrax to no longer be parallel to the ground.  When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.  In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to

make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating;" and "…the gyroscopic mechanized balancing feature detects the 'levelness' of the product"), 7 ("**Product Warning Signals**" (emphasis in original); and "**Low or charging battery:** The battery indicator light will indicate insufficient charge for operation by turning red." (emphasis in original)), and 8 ("Hovertrax's balance sensors").  In addition, the Hovertrax product comprises a controller that executes the control loop generating a control signal, the control signal controlling the motorized drive arrangement based at least in part on the pitch data, the control signal determining the torque to be applied to the two wheels, the controller adding a pitch modification to the pitch data if a current speed of the transporter exceeds a threshold.  *See, e.g., id.* at pp. 6 ("The Hovertrax responds to the rider's foot movements.  Remember this.  The Hovertrax moves due to fore and aft foot platform tilt caused by the rider's foot (or feet).  Movement, speed, and stopping are controlled by the degree to which the rider's feet causes the foot platforms of the Hovertrax to no longer be parallel to the ground.  When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.  In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating;" and "the gyroscopic mechanized balancing feature detects the 'levelness' of the product"), 7 ("**HOVERTRAX SPEED CONTROL**" (emphasis in original); and "The recommended top speed of the Hovertrax is approximately six miles per hour (9 km/hr).  Speed may be affected by rider weight, surface conditions, battery charge, *etc.*  The Hovertrax has a 'limiter' feature which may engage to warn against further acceleration beyond

recommended levels.  This safety feature causes the front edge of the foot platforms to 'push back' against the rider's feet to caution about excessive speed."), and 9 ("12. Control Module").

63.     On information and belief, the Hovertrax product meets all the elements of claim 15 of the '984 patent.  The Owner's Manual for the Razor Hovertrax product describes a method for limiting the speed of a transporter, the transporter including a ground contacting module, *see, e.g.,* Ex. H, pp. 1 ("dual-platform two wheeled personal mobility system"), 4 (figure), 8 ("The Hovertrax wheels must be able to grip the ground for you to stay upright."), and 9 ("10. Wheel w/ Hub Motor (Right/Left)"), a platform, *see, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 ("Anti-Slip Foot Platforms"), 6 ("pressure on the foot platform(s) applied by the rider's feet"), and 9 ("1. Rubber Footplate"), at least one ground contacting wheel, *see, e.g., id.* at pp. 1 ("dual-platform two wheeled personal mobility system"), 4 (figure), 7 ("two-wheeled"),  8 ("The Hovertrax wheels must be able to grip the ground for you to stay upright.") and 9 ("10. Wheel w/ Hub Motor (Right/Left)"), a motorized drive arrangement, *see, e.g., id.* at pp. 3 ("…the electrical and drive components…"), 4 (figure), 6 ("When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground.  In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet.  Such changes are interpreted by the Hovertrax as instructions to make the wheels move.  Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating."), and 9 ("10. Wheel w/ Hub Motor (Right/Left)"), and at least one pitch sensor sensing a pitch of at least a portion of the transporter, *see, e.g., id.* at pp. 6 ("The Hovertrax responds to the rider's foot movements.  Remember this.  The Hovertrax moves due to fore and aft foot platform tilt caused by the rider's foot (or feet).  Movement, speed, and stopping

are controlled by the degree to which the rider's feet causes the foot platforms of the Hovertrax to no longer be parallel to the ground. When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground. In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet. Such changes are interpreted by the Hovertrax as instructions to make the wheels move. Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating;" and "the gyroscopic mechanized balancing feature detects the 'levelness' of the product") and 8 ("Hovertrax's balance sensors"), the transporter being unstable with respect to tipping in a fore-aft plane of the transporter when the motorized drive arrangement is not powered, *see, e.g., id.* at p. 8 ("Remember to check for the green battery indicator light before you get on. If it is not lit, the unit is not on and you will fall."). The method described comprises supplying, by the motorized drive arrangement, a torque to the at least one ground contacting wheel to maintain stability of the transporter in the fore-aft plane. *See, e.g., id.* at p. 6 ("When the product is 'on', the gyroscopic mechanized balancing feature of the Hovertrax tries to keep the foot platforms of the product parallel to the ground. In use, Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet. Such changes are interpreted by the Hovertrax as instructions to make the wheels move. Hovertrax tries to re-level a forward tilt by accelerating, and tries to level a rearward tilt by decelerating."). The method described also comprises determining, by the controller, a current speed of the transporter, determining, by the controller, a current maximum operating threshold for the transporter, and commanding, by the controller, the motorized drive arrangement to supply the torque to the at least one ground contacting wheel to pitch the transporter in a direction opposite a current direction of travel of

the transporter if the current speed is greater than the current maximum operating threshold. *See, e.g., id.* at pp. 6 ("Hovertrax then detects changes from 'level' which are caused by fore and aft pressure on the foot platform(s) applied by the rider's feet. Such changes are interpreted by the Hovertrax as instructions to make the wheels move."), 7 ("**HOVERTRAX SPEED CONTROL**" (emphasis in original) and "The recommended top speed of the Hovertrax is approximately six miles per hour (9 km/hr). . . . The Hovertrax has a 'limiter' feature which may engage to warn against further acceleration beyond recommended levels. This safety feature causes the front edge of the foot platforms to 'push back' against the rider's feet to caution about excessive speed.") and 9 ("12. Control Module").

64.      On information and belief, Razor has knowledge of the '984 patent or has acted with willful blindness to its existence. Since at least October 2011, all Segway model i2 and x2 personal transporters have had affixed to them a label that reads "Patents: http://www.segway.com/downloads/pdfs/ReferenceManual.pdf." The Reference Manual to which one is directed by this label contains, on pp. 141 and 142, a list of Segway patents and applications that cover the i2 and x2 personal transporters, including Patent Application Publication No. 20050121866, which is the published application that ultimately issued as the '607 patent. The '984 patent is a continuation of U.S. Patent No. 8,830,048, which is a continuation of abandoned U.S. Patent Application No. 13/585,041, which is a continuation of U.S. Patent No. 8,248,222, which is a continuation of U.S. Patent No. 7,812,715, which is a division of the '607 patent. These personal transporters were the original such personal transporters in the United States and world markets, and were recognized as pioneering and inventive, and therefore one would believe that they were almost certainly covered by United

States patents.  Further, Razor has had actual knowledge of the '984 patent at least as of the filing of this complaint.

65.     On information and belief, Razor has been and is now indirectly infringing the '984 patent by actively inducing others, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 60-63 above, to directly infringe at least claims 1, 8 and 15 of the '984 patent.  On information and belief, distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described above directly infringe at least claims 1, 8 and 15 of the '984 patent.  Further, on information and belief, Razor, by providing at least manuals, training, guides, videos and/or demonstrations, including the Owner's Manual attached hereto as Exhibit H, induces distributors, customers and/or end-users of the personal transporters identified and described in paragraphs 60-63 to perform acts intended by Razor to cause direct infringement of at least claims 1, 8 and 15 of the '984 patent.  On information and belief, as discussed in paragraph 64, Razor has knowledge of the '984 patent or has acted with willful blindness to its existence.  Razor is therefore liable for inducing infringement of the '984 patent under 35 U.S.C. § 271(b).

66.     On information and belief, Razor has been and is now indirectly infringing the '984 patent by contributing to infringement by others of at least claims 1, 8 and 15 of the '984 patent, including distributors, customers and end-users who use, sell or offer to sell the personal transporters identified and described in paragraphs 60-63 above.  On information and belief, Razor contributes to such infringement at least by providing to such distributors, customers and end-users, personal transporters or components thereof, which are specially made or adapted for use in an infringement of at least claims 1, 8 and 15 of the '984 patent and are not

staple articles of commerce suitable for substantial non-infringing use.  On information and belief, as discussed in paragraph 64, Razor had knowledge or acted with willful blindness to the fact that the personal transporters or components thereof are specially made or adapted for use to infringe the '984 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Razor is therefore liable for contributory infringement of the '984 patent under 35 U.S.C. § 271(c).

67.     As a result of its infringement of the '984 patent, Razor has damaged Plaintiffs.  Razor is liable to Plaintiffs in an amount to be determined at trial that adequately compensates Plaintiffs for the infringement, which by law can be no less than a reasonable royalty.

68.     Razor's acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to Plaintiffs for which there is no adequate remedy at law.  Unless enjoined by this Court, Razor will continue to infringe the '984 patent.

## **PRAYER FOR RELIEF**

69.     Plaintiffs request that:

a.     Judgment be entered that Razor has directly and indirectly infringed the '230 patent, '763 patent, '330 patent, '607 patent, '872 patent, and '984 patent literally and/or under the doctrine of equivalents, and that Plaintiffs are entitled to damages due to Razor's infringement of the '230 patent, '763 patent, '330 patent, '607 patent, '872 patent, and '984 patent pursuant to 35 U.S.C. § 284;

b.     For an accounting, including a post-judgment accounting, to determine the damages to be awarded to Plaintiffs as a result of all of Razor's making, using, selling, offering for sale, or importing of any product or service falling within the scope of any

claim of the '230 patent, '763 patent, '330 patent, '607 patent, '872 patent, or '984 patent, or otherwise infringing any claim of the '230 patent, '763 patent, '330 patent, '607 patent, '872 patent, or '984 patent;

   c.  Judgment be entered that this is an exceptional case, and that Plaintiffs are entitled to its reasonable attorney's fees pursuant to 35 U.S.C. § 285;

   d.  Judgment be entered that Plaintiffs are entitled to interest and costs of suit, including pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

   e.  Judgment be entered permanently enjoining Razor and its parents, subsidiaries, affiliates, successors, and assigns, and each of their officers, directors, employees, representatives, agents, attorneys, and all persons acting in concert or active participation with them, or on their behalf, or within their control, from making, using, selling, offering for sale, or importing any product or service falling within the scope of any claim of the '230 patent, '763 patent, '330 patent, '607 patent, '872 patent, or '984 patent, or otherwise infringing any claim of the '230 patent, '763 patent, '330 patent, '607 patent, '872 patent, or '984 patent; and

   f.  For such other and further relief as the Court may deem just and proper under the circumstances.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Derek J. Fahnestock (#4705)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mant.com
dfahnestock@mnat.com

*Attorneys for Plaintiffs*

OF COUNSEL:

Tony V. Pezzano
Michael P. Dougherty
Christopher C. Carnaval
KING & SPALDING
1185 Avenue of the Americas
New York, NY  10036
(212) 556-2100

Jeffrey M. Telep
Elizabeth E. Owerbach
KING & SPALDING
1700 Pennsylvania Avenue NW
Suite 200
Washington, DC  20006
(202) 737-0500

Maureen K. Toohey
TOOHEY LAW GROUP LLC
340 Commercial Street
Manchester, NH  03101
(603) 206-0200

Ping Gu
ZHONG LUN LAW FIRM
36-37/F, SK Tower
6A Jianguomenwai Avenue
Chaoyang District
Beijing 100022
People's Republic of China
86-10-5957-2288

December 23, 2015